**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ISMAEL LUGO, | : |
| Petitioner, | : Civil No. 10-920 (JBS) |
| v. | : |
|  | : **OPINION** |
| DONNA ZICKEFOOSE, WARDEN, F.C.I. FORT DIX, | : |
| Respondent. | : |

**APPEARANCES:**

> ISMAEL LUGO, Petitioner pro se
> #31928-054
> Camp F.C.I. Fairton
> P.O. Box 420
> Fairton, New Jersey 08320

**SIMANDLE, District Judge**

Plaintiff, Ismael Lugo ("Lugo"), a federal prisoner confined at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), brings this application challenging his federal court conviction on the ground that he is actually innocent of money laundering, based upon an intervening change of law by the Supreme Court of the United States in United States v. Santos, 553 U.S. 507 (2008). Lugo names Warden Donna Zickefoose as the respondent in this action.

This Court has reviewed the petition and traverse filed by Lugo, as well as the answer and relevant record submitted by

respondent, and for the reasons set forth below, will dismiss the petition for lack of jurisdiction, as it is a prohibited second or successive motion under 28 U.S.C. § 2255.

## I.  BACKGROUND

On September 26, 2005, Lugo pled guilty before the late Honorable Richard C. Casey, U.S.D.J., in the United States District Court for the Southern District of New York, to a superseding information[1] charging him with (1) conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 846; (2) conspiracy to import five kilograms and more of cocaine into the United States, in violation of 21 U.S.C. § 963; and (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  See Transcript of Plea Allocution Hearing ("Plea Tr."), dated September 26, 2005, attached as Exhibit C to Petition.  Lugo's plea of guilty was made pursuant to a September 12, 2005 plea agreement signed by petitioner, his counsel, and an Assistant United States Attorney for the Southern District of New York.  See Exhibit B to Petition.  The plea agreement provided for a stipulated guidelines range of 210 to 262 months imprisonment, but allowed the parties to seek a non-guidelines

---

[1] Lugo signed a waiver of indictment form voluntarily waiving his right to have his case presented to a grand jury for indictment.  See Transcript of Plea Allocution Hearing, dated September 26, 2005, at P4:L4-24, attached as Exhibit C to Petition.

sentence based upon factors set forth in 18 U.S.C. § 3553(a). See Pet. Ex. B, Plea Agreement at p. 5.  Petitioner also agreed that he would "not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 ... any sentence within or below the Stipulated Guidelines Range [of 210 to 262 months]." Id. at p. 6.

On May 9, 2006, Lugo appeared before Judge Casey for sentencing.  Judge Casey sentenced Lugo to 210 months in prison. See May 9, 2006 Sentencing Transcript at P9:L19-21, attached as Ex. D to Petition.  Lugo is presently serving his prison sentence at Camp FCI Fairton.

On or about October 23, 2006, Lugo filed a motion to vacate his sentence and conviction, pursuant to 28 U.S.C. § 2255.  The matter was assigned to the Honorable Colleen McMahon, U.S.D.J., because Judge Casey passed away in early 2007.  Judge McMahon denied the § 2255 motion by Order entered on January 17, 2008, based on petitioner's express, knowing and voluntary waiver of his right to collaterally attack his sentence.  See January 17, 2008 Order, attached as Ex. E to Petition.

Lugo then filed this habeas petition on or about February 23, 2010.  The Government filed an answer to the petition on April 15, 2010.  Lugo filed a reply to the Government's answer on May 3, 2010 and May 7, 2010.

3

## II.   CLAIMS PRESENTED

Lugo first claims that his sentence was imposed in an illegal manner because he was not present when the judge sentenced him to 210 months imprisonment and five years supervised release on Counts Two and Three.  This claim will be dismissed because there is no question that Lugo was present at his plea allocution and at his sentencing hearing.  In fact, Lugo attaches the transcripts from both hearings to his habeas petition.  Therefore, this claim is denied for complete lack of merit.

Lugo also contends, in reliance on United States v. Santos, 553 U.S. 507 (2008), that he is actually innocent of the money laundering statute, 18 U.S.C. § 1956, because there was no admission by Lugo that he laundered the proceeds (profits) of his illegal drug trafficking activities.  Lugo argues that the transactions that normally occur during the course of running an unlawful activity are not identifiable uses of profits, in his case, the purchase of motor vehicles for the trafficking of drugs; and thus, it was not shown that Lugo violated the money laundering statute.

## III.   DISCUSSION

Lugo brings his habeas petition as a pro se litigant.  A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97,

106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless- . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

A.  The Santos Decision

Lugo relies on the Supreme Court's recent decision in Santos to support his claims for habeas relief in this petition.  In Santos, the Supreme Court addressed the definition of the term "proceeds" in the federal money laundering statute when applied to an illegal gambling operation.  The statute proscribes, inter alia, conducting "a financial transaction which in fact involves the proceeds of specified unlawful activity...." 18 U.S.C. § 1956(a)(1)(emphasis added).  The transactions at issue in Santos were Santos's payments to his employees (runners who gathered bets from customers and collectors who took money from runners and delivered it to Santos) and his payments to winning bettors.  See Santos, 553 U.S. at 509 (plurality opinion).

5

Santos is a plurality opinion.  Justice Scalia, writing for the plurality (Justices Souter, Thomas, and Ginsburg),[2] argued that there was nothing in the statute to indicate whether "proceeds" meant "profits" or "gross receipts."  Since "[the rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them," Justice Scalia contended that the Court should adopt the more "defendant-friendly" rule that the statute only forbids laundering of profits.  Id. at 513-14.

Justice Stevens concurred in the result, providing the necessary fifth vote for the plurality opinion.  He concluded that "proceeds" must mean "profits" where the transactions in question involved "revenue generated by a gambling business that is used to pay the essential expenses of operating that business...." Id. at 527 (Stevens, J., concurring).  Justice Stevens's opinion appears to be entirely based on the merger problem:

> Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.

Id. at 527.  Notably, Justice Stevens disagreed with the plurality in arguing that the meaning of "proceeds" depends on

---

[2] Justice Alito dissented, together with Justices Kennedy and Breyer, and Chief Justice Roberts.

the context of the statute's application; the plurality contended that "proceeds" always means "profits."  In light of the available legislative history, Justice Stevens would interpret "profits" to mean "gross receipts" except where the perverse result generated by the merger problem obtains.  Id. at 528 n. 7.[3]

Justice Scalia wrote that because Justice Stevens's concurring opinion was the swing vote, and because "his vote [was] necessary to the [Court's] judgment, and since his opinion rests upon a narrower ground, the Court's holding is limited accordingly."  Santos, 553 U.S. at 523.

B.  Actual Innocence Claim

Here, Lugo contends that he is entitled to habeas relief under § 2241, despite the fact that he had filed a previous § 2255 motion, because he is "actually innocent," and because relief under § 2255 now is barred and, thus, is "inadequate or

---

[3]  The plurality also found its conclusion to be justified because it allows the money laundering statute to avoid the "merger problem."  Id. at 515-16.  The merger problem would arise if "proceeds" meant "gross receipts," meaning that:
> [a]nyone who pays for the costs of a crime with its proceeds-for example, the felon who uses the stolen money to pay for the rented getaway car-would violate the money-laundering statute.... Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering.

Id. at 516.  The plurality could not see "why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime."  Id. at 517.

7

ineffective." Cf. In re Dorsainvil, 119 F.3d 245 (3d Cir.1997). Lugo appears to argue that § 2255 is "inadequate or ineffective" because its gatekeeping provisions have prevented a hearing on the merits of his claim of actual innocence.

As noted by the Court of Appeals for the Third Circuit in Dorsainvil, 119 F.3d at 249, § 2255 has been the "usual avenue" for federal prisoners seeking to challenge the legality of their confinement. See also Chambers v. United States, 106 F.3d 472, 474 (2d Cir. 1997); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir. 1977); United States v. Walker, 980 F. Supp. 144, 145-46 (E.D.Pa. 1997)(challenges to a sentence as imposed should be brought under § 2255, while challenges to the manner in which a sentence is executed should be brought under § 2241). Motions under § 2255 must be brought before the Court which imposed the sentence. See 28 U.S.C. § 2255. In addition, before a second or successive § 2255 motion is filed in the district court, the petitioner must move in the appropriate court of appeals for an order authorizing the district court to consider the petition on the grounds of either (1) newly-discovered evidence that would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the petitioner guilty of the offense or (2) a new rule of constitutional law made retroactive by the Supreme Court. 28 U.S.C. §§ 2244(a), 2255.

Section 2255, however, contains a safety valve where "it appears that the remedy by motion is inadequate or ineffective to test the legality of [Petitioner's] detention."  In Dorsainvil, a case involving a Bailey claim, the Third Circuit held that the remedy provided by § 2255 is "inadequate or ineffective," permitting resort to § 2241 (a statute without timeliness or successive petition limitations), where a prisoner who previously had filed a § 2255 motion on other grounds "had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate."  119 F.3d at 251.  The court emphasized, however, that its holding was not intended to suggest that § 2255 would be considered "inadequate or ineffective" merely because a petitioner is unable to meet the stringent gatekeeping requirements of § 2255.  Id.  To the contrary, the court was persuaded that § 2255 was "inadequate or ineffective" in the unusual circumstances presented in Dorsainvil because it would have been a complete miscarriage of justice to confine a prisoner for conduct that, based upon an intervening interpretation of the statute of conviction by the United States Supreme Court, may not have been criminal conduct at all.  Id. at 251-52.

Thus, under Dorsainvil, this Court would have jurisdiction over Lugo's petition if, and only if, Lugo demonstrates (1) his "actual innocence" (2) as a result of a retroactive change in substantive law that negates the criminality of his conduct (3)

9

for which he had no other opportunity to seek judicial review. 119 F.3d at 251-52; Cradle v. U.S. ex rel. Miner, 290 F.3d 536, 539 (3d Cir. 2002); Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).

In this case, Lugo contends that he is actually innocent of violating the money laundering statute because, under Santos, there is no evidence to show that he used the proceeds or profits of his drug trafficking activities in a manner that violated the money laundering statute.[4]

A freestanding claim of actual innocence has never been explicitly recognized by the Supreme Court. See House v. Bell, 547 U.S. 518 (2006); Baker v. Yates, 2007 WL 2156072 (S.D. Cal. July 25, 2007) ("In practice, however, the Supreme Court has never explicitly held that a freestanding innocence claim is available during habeas review, even in a death penalty case."). In a noncapital case such as this, an assertion of actual innocence is ordinarily "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to

---

[4] Lugo also appears to claim that he would not have pled guilty had he known about the Santos's decision, which interpreted the term "proceeds" to mean "profit" rather than receipts or gross receipts. This argument essentially falls under the umbrella of Lugo's "actual innocence" claim, and thus, does not require separate consideration.
    Indeed, this Court agrees with the Government in finding that Lugo has not demonstrated that his plea was not knowing or involuntary, based on petitioner's allocution as set forth in the September 26, 2005 plea transcript. Lugo clearly understood the nature of the charges to which he was pleading as well as the consequences of his plea. Thus, Lugo is bound to the terms of the plea agreement unless he can show he is factually innocent.

have his otherwise barred constitutional claim considered on the merits."  Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993); Whitby v. Dormire, 2 Fed. App'x 645, at *1 (8th Cir. 2001); Mansfield v. Dormire, 202 F.3d 1018, 1023-24 (8th Cir. 2000).

In House, the United States Supreme Court was presented with a freestanding claim of innocence, but it "decline[d] to resolve this issue."  House, 126 S.Ct. at 2087. The Supreme Court did, however, provide some insight into what might be required to prove such a claim.  Id. (noting, "whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it.").  The Court recognized, as it did in Herrera, that the standard for any freestanding innocence claim would be "'extraordinarily high,'" id. (quoting Herrera, 506 U.S. at 417), and it would require more than the showing required to make a successful gateway innocence claim.  Id. at 2087 ("The sequence of the Court's decisions in Herrera and Schlup[5] -- first leaving unresolved the status of freestanding claims and then establishing the gateway standard-implies at the least that Herrera requires more convincing proof of innocence than Schlup.").  Even assuming that such a freestanding claim could be raised, Lugo has not met or even approached an "extraordinarily high" standard here by asserting only that "proceeds" under the money-laundering statute at issue here, 18 U.S.C. § 1956(a),

---

[5] Schlup v. Delo, 513 U.S. 298, 327 (1995).

11

means "profits," as the four-member Supreme Court plurality concluded in Santos.

Moreover, neither the Supreme Court nor any other federal court has held that Santos is retroactive to cases on collateral review, see, e.g., Brown v. United States, 2009 WL 2849776, *6 (E.D. Tenn. Aug. 31, 2009)("The Supreme Court, however, has not held that Santos should be applied retroactively."), although some courts have assumed, for the sake of argument, that Santos sets forth a change in a substantive rule that would apply retroactively to otherwise timely § 2255 motions.  See, e.g., United States v. Ramos, 2009 WL 2485592, *9 n. 3 (S.D. Tex. Aug. 7, 2009).  Other courts have recognized that "Santos has limited precedential value."  United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir. 2009).  As the Eleventh Circuit Court of Appeals explained,

> Three parts of Justice Scalia's four-part opinion are for a plurality of justices, and those parts do not state a rule for this case.  See Santos, 128 S.Ct. at 2022-45. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'" "Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed. 2d 260 (1977)(quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923, n. 15, 49 L.Ed.2d 859 (1976)(opinion of Stewart, Powell, and Stevens, JJ.)).  The narrow holding in Santos, at most, was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation.  The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking.  Demarest, 570 F.3d at 1242 (concluding that,

12

consequently, Santos afforded the defendants no relief from their money-laundering convictions). Even courts willing to apply Santos retroactively, for the sake of argument, have found that it does not apply to drug-smuggling or other drug-trafficking operations, that is, to any conduct other than conduct of an illegal gambling operation. See Ramos, 2009 WL 2485582 at *12 (citing cases).

This court is persuaded that, assuming without deciding that Santos applies retroactively to cases on collateral review, the fragmented decision in Santos must be limited to its narrowest grounds. Marks, 430 U.S. at 193; Demarest, 570 F.3d at 1242 (citing Marks).[6] Those narrowest grounds are defined by Justice Stevens's concurrence. Here, Lugo's case falls precisely into the kind of case to which Justice Stevens would not apply the rule of lenity to define "proceeds" under § 1956 as "profits"; rather, it is the kind of case in which he explained that legislative history demonstrates that "proceeds" means "gross revenues," because it is a case involving sale of contraband and the operation of a crime syndicate involving such sales. Santos, 128 U.S. at 2032 & n. 3 (Stevens, J., concurring). Thus, Santos simply affords no basis for concluding that Lugo is "actually innocent" of the money-laundering charges to which he pleaded

---

[6] "When it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court." United States v. Alcan Aluminum Corp., 315 F.3d 179, 189 (2d Cir. 2003)(citing Rappa v. New Castle County, 18 F.3d 1043, 1058 (3d Cir. 1994)). As discussed above, between the plurality and Justice Stevens's opinion in Santos, no "single rationale explaining the result enjoys the assent of five Justices." Marks, 430 U.S. at 193.

guilty. See United States v. Fleming, 287 Fed. Appx. 150, 155 (3d Cir. 2008)(case involving money laundering charge arising from the predicate offense of selling contraband, where the court retained the "gross receipts" definition of "proceeds" in regard to the predicate offense of drug trafficking; the court relied substantially on Justice Alito's point in Santos that five justices (Justice Stevens and the four dissenting justices) agreed that "'proceeds' 'include[s] gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales,'" citing Santos, 553 U.S. at 531-32)).[7]

Accordingly, this Court finds that, as applied here, Santos is limited to its facts; it stands only for the proposition that the money laundering statute does not make criminal the use of the revenue from an illegal gambling operation to pay for the expenses involved in running the operation. See Bull v. United States, Nos. CV 08-4191 CAS, CR 04-402 CAS, 2008 WL 5103227, at *8 (C.D. Cal. Dec.3, 2008)("[G]iven Justice Stevens' opinion that "proceeds" means "profits" only for the purposes of laundering funds from an illegal gambling business, the Court cannot

---

[7] This Court does not find the Third Circuit's decision in Fleming to be inconsistent with its earlier decision in United States v. Yusuf, 536 F.3d 178 (3d Cir. 2008). The Third Circuit held that "'proceeds' from the mail fraud in [Yusuf's] case also amount to 'profits' of mail fraud [in accordance with Santos]" because the mail fraud in question had negligible expenses and considerable revenue. Id. 536 F.3d at 190 (citing Santos 553 U.S. at531-32). The court essentially adopted Justice Scalia's view of the precedential effect of Santos, recognizing that "proceeds' means 'profits' when there is no legislative history to the contrary." Yusuf, 536 F.3d at 186, n. 12.

14

conclude that Santos announces a "new rule" defining the term "proceeds" to mean "profits" in all statutes."); United States v. Orosco, 575 F. Supp. 2d 1214, 1218 (D. Colo. 2008)("[T]he only binding aspect of [Santos is] its specific result relating to ... illegal gambling on the facts of the case.").

The result reached here fits with reasoning employed by both the Santos plurality and Justice Stevens's concurrence: Lugo's conviction for money laundering does not pose the merger problem. In Santos, the defendant's payments to his employees and winning bettors were necessary transactions for someone running an illegal gambling operation; considering those payments to be money laundering would have made the same conduct constitute both illegal gambling and money laundering.

Consequently, Lugo is not entitled to relief on his "actual innocence" claim. Lugo has failed to demonstrate circumstances that would render § 2255 an inadequate or ineffective remedy. Based on the reasoning as set forth above, this Court finds that Santos does not represent an intervening change in the law that renders non-criminal the crime for which Lugo was convicted.[8]

---

[8] But see Abuhouran v. Grondolsky, 2010 WL 3330185 (3d Cir. Aug. 25, 2010), noting in that case that petitioners could file § 2241 petitions under Dorsainvil, because petitioners claimed they were being detained for conduct that had subsequently been rendered non-criminal by an intervening Supreme Court decision (Santos), with regard to payments charged as money laundering in their case which were expenses of the bank frauds and not profits from the bank frauds. However, the Third Circuit ultimately affirmed the district court, which had denied the habeas petition holding that the payments at issue were profits and thus, a proper basis for the money laundering charges.

15

Lugo also fails to demonstrate any circumstances amounting to a "complete miscarriage of justice" that would justify application of the safety-valve language of § 2255 rather than its gatekeeping requirements. Therefore, this Petition must be considered a second or successive motion under § 2255, which Lugo has not received authorization to file, and over which this Court lacks jurisdiction.[9] 28 U.S.C. § 2255.

Whenever a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631.

Lugo does not indicate that he has already petitioned the Court of Appeals for the Second Circuit for leave to file a successive § 2255 motion based on the Supreme Court's ruling in Santos. Nevertheless, he fails to allege any of the predicate grounds permitting a second or successive § 2255 motion.

---

[9] Although this Court is reclassifying the petition as a § 2255 motion, no Miller notice and order is necessary to afford Lugo an opportunity to raise additional § 2255 grounds. The purpose of the Third Circuit's decision in United States v. Miller, 197 F.3d 644 (3d Cir. 1999), was to provide fair warning to petitioners whose petitions were being recharacterized as § 2255 motions so that they could ensure that all their claims were fully raised in a single all-encompassing § 2255 petition. Such warning, the Miller court reasoned, is necessary because petitioners will thereafter be unable to file "second or successive" § 2255 petitions without certification by the Court of Appeals. Because Lugo in this case has already filed a § 2255 motion which was addressed by the sentencing Court, and because the current petition is itself "second or successive," no purpose would be served by a Miller notice.

Therefore, this Court finds that it would not be in the interests of justice to transfer this Petition to the United States Court of Appeals for the Second Circuit.  Accordingly, this Petition will be dismissed.  Of course, this Court's decision does not preclude Lugo from seeking leave to file a second or successive § 2255 motion by his own, independent application to the Second Circuit.

### III.  CONCLUSION

For the reasons set forth above, this action for habeas relief under § 2241 will be dismissed with prejudice for lack of jurisdiction, because it is a second or successive motion under § 2255 challenging petitioner's federal sentence.  An appropriate order follows.


                                       **s/ Jerome B. Simandle**
                                       JEROME B. SIMANDLE
                                       United States District Judge
Dated: **December 10, 2010**